Yes, Your Honor. Please proceed. Yes, Your Honor. May it please the Court and opposing counsel, my name is Leanna Anderson and I represent Appellate PWE Enterprises, Inc., PWE. The primary question at issue here is who is entitled to returned expenses deducted from PWE's wagers as taxes that were ultimately not in the trial that the oral contract answers this question. But the Bankruptcy Court committed an error of North Dakota law by disregarding contemporaneous documents supporting PWE's claim. The Bankruptcy Court also committed clear factual errors under the Griffin case by finding valid testimony credible when the testimony itself contradicted contemporaneous documents, the testimony of the COO of PWE  Under North Dakota law, the Bankruptcy Court was required to consider contemporaneous extrinsic evidence and the course of dealing between the parties to determine the nature of the parties' oral agreement. The contemporaneous evidence in this case, the primary source of such evidence, was 106 weeks of activity reflected in the RSI-generated income sheets. The undisputed plain face of the income statements and the testimony of William Wass, the COO of PWE who administered the contracts, was that there was a total handle that was the amount of PWE's wagers. From this total handle, an amount of takeout or retainage was deducted. This takeout or retainage was used for certain expenses, including taxes, and a 1% fee to RSI. The remainder of this takeout or retainage was paid to PWE as a rebate. In looking through this 106 weeks of activity, although expenses go up and down, the RSI fee of 1% never changes. When expenses go up and down, those expenses impact only one person, PWE. In fact, there are at least two occasions, and several more in terms of expenses in general, where taxes themselves have changed and PWE is the person who directly benefits from that in their revenue. VALA prepared an exhibit at Appendix 1185 that summarizes all of the weekly sheets. The weekly sheets themselves are also found in the Bankruptcy Court's docket at 939-3. If the court compares line 78 and line 90, which would be the January 5, 2003 return and the March 30, 2003 return, the court will see that when the taxes go down from 3.8% to 3.5%, PWE's net revenue goes up and the RSI fee stays constant at 1%. Similarly, if the court will compare lines 100 and line 94 of that same summary appendix, that would be the June 8, 2003 and the April 27, 2003 lines, when the taxes go down from 3.8% to 3.7%, PWE's net revenue goes up and RSI's 1% fee always stays the same. There is no reference in any of the documents to a concept of a variable rebate rate, and the rebate rate indisputably fluctuates due to a decrease in expenses. In other words, if the taxes come back and they weren't owed as expenses, they belong to PWE. The North Dakota Supreme Court has said, where the evidence of the course of dealing is such that reasonable minds could draw but one conclusion, the question becomes one of law. That's the Mandan education case at 200 North Dakota 92. But even if there was no error of law, the bankruptcy court committed clear error because all of the extrinsic documents, including the long list that the bankruptcy court failed to consider, contradict BALA's version of the contract, and reversal is appropriate under Griffin v. Omaha 785 Fed Second 620. That's an Eighth Circuit case from 1986. Counsel, pardon me for interrupting, but which party has the burden in this case as to not only what this oral contract said, but what it means? It's a shifting burden. Yes, sorry, Your Honor. It's a shifting burden. So, PWE had the initial burden to come forward with proof on his claim. BALA had the burden to come forward with proof that rebutted that claim, and then PWE bears the ultimate burden of persuasion. Again, under the Griffin case, where physical documentary or other forms of objective evidence contradict a witness's story, the reviewing court may find clear error, even if there's a finding that's proposedly based on a credibility determination. All the objective evidence here contradicts BALA's testimony, and North Dakota law contradicts the bankruptcy court's conclusion that the rebate and takeout pool could belong to RSI, and that's part of our breach of contract, and due process argument, and now I believe it's Mr. Fremstad's time. All right. Mr. Fremstad. Thank you. May it please the court and counsel, I'm going to focus my time primarily on the issue of unjust enrichment, although we do also address a breach of contract in our brief. While my time is short, Your Honors, this is a simple case. In her brief, Ms. BALA admits that RSI paid, quote, illegally collected taxes, end quote, to the state of North Dakota from wagers made by and collected from Carlson and PWE. Based upon this court's prior decision in 2015, the state has refunded these monies, and now the question is who should be allowed to keep the money, RSI who illegally collected the same in the first place, or should they go to Carlson and PWE? The answer I submit is obvious. Under the theory of unjust enrichment, Carlson and PWE are entitled to restitution of the illegally collected funds. Counsel, I had a question regarding unjust enrichment. The bankruptcy court included a wrongdoing element in its analysis, and what was the inclusion of that element dispositive as to its conclusion on that claim? The conclusion was, I think, dispositive. The district court tried to downplay the role that it played, but under North Dakota law, the bankruptcy court erred because it is not an element of fraud or wrongdoing on the part of RSI is not an actual element. It should not have been considered. Instead, under North Dakota law, as the North Dakota Supreme Court has repeated, one, it has made it very clear that misconduct is not an element, but it's also more basically said that, quote, for a complainant to recover, it is sufficient if another has, without justification, obtained a benefit at the expense of the complainant. And this absence of a justification, that simply means that is there an appropriate purpose to benefit RSI? Here, that didn't occur. There is no reason why RSI should be allowed to retain the monies. RSI and BALA were involved in passing account wagering, but they admitted at trial, Your Honor, that there was confusion over the handling of taxes, and that, quote, RSI was making assumptions somewhat on autopilot. There was confusion, and it handed that money over to the state, end quote. Imagine this, Your Honor. RSI was handling over $500 million in wages, had in-house counsel and outside counsel, and they still proceeded to just randomly hand the tax monies over to whomever they want. RSI and BALA should not be allowed to keep a windfall from an illegal tax collection. This is especially true in this case where, as BALA admits, RSI was not to profit from the taxes or upcharge the taxes. Instead, assuming that those taxes were even valid, which they weren't, those taxes were simply to be a pass-through. BALA also admitted, and the court found, that there were discussions regarding North Dakota lowering its tax rate and that RSI intended to give a better deal. So if we just start with the simple issue of what is unjust enrichment under North Dakota law, it is that it's undisputed Carlson and PWE paid over their wagers. Out of these wagers were taxes, and the taxes were based on the types of bets Carlson and PWE then made. It wasn't RSI that got to decide the tax rates. And ultimately, we now have a situation where the tax monies have come back. So while the courts below got the issue wrong, Your Honor, the conclusion that unjust enrichment has not occurred, that is a conclusion of law. Under the Zent case, 459 NW 2nd 795, North Dakota has said, you take a look at the bundle of facts and is that unjust enrichment or not? And the court got it wrong because they did several things incorrect. First of all, this court in the Glover case 664 F 2nd and other cases has in fact reversed a denial of unjust enrichment. That's what also happened with the North Dakota Supreme Court in the Zent case. So just on the facts, you get to look at it de novo and decide whether there's unjust enrichment. But equally importantly, the district court and the bankruptcy court got it wrong because they improperly looked at the idea of whether the parties contemplated this situation. That's not what quasi-contractor unjust enrichment is about. They also improperly looked at who got the benefit of the bargain. But by definition, restitution is not about the benefit of the bargain, but it is about non-bargained benefits. Counsel, how is this argued to the bankruptcy court? To answer your question, Your Honor, we had a trial that brought out the testimony and then we brought in post-trial briefs where both PWE and Carlson raised both the issue of contract and quasi-contract remedies. And ultimately, because of the nature of the standard of review, that is why I'm focusing on unjust enrichment because it is more appropriate for the de novo review. But in the quasi-contract argument you made before the bankruptcy court, was this issue of the requirement of misconduct fleshed out? So, Your Honor, the primary cases that we cited below to the bankruptcy court were the Harrison Sheet Metal case and looked at the issue of the restatement and Restatement 1, Section 48. The bankruptcy court in its decision then improperly brought in this idea of wrongful conduct or fraud. Thank you all. I'll reserve the balance of my time. All right. Mr. Kinsella? Good morning, Your Honors, and may it please the court. My name is Stephen Kinsella and I am here on behalf of Appellee Susan Bala. Your Honors, this case may appear unique at first. The RSI bankruptcy case is one of the longest running bankruptcy cases in the country. It involves the interesting world of horse race wagering. This court itself has ruled on four separate appeals arising from the bankruptcy case and one appeal resulting in the reversal of RSI and Ms. Bala's criminal convictions. However, the issues before the court today are simply not that unique. PWE and Mr. Carlson are appealing denials of their proofs of claim. The basis for those proofs of claim are essentially two legal theories. First, a breach of an oral contract claim, and second, this quasi-contract unjust enrichment claim and the alternative. Both are governed by North Dakota law. The bankruptcy court held a three-day trial, issued a 99-page ruling with substantial factual findings, and denied both of the proofs of claim. The appellants first appealed to the District Court of North Dakota, raising many of these same arguments, and the District Court conducted an extensive analysis and issued a ruling affirming the bankruptcy court's decision. On appeal now today, the appellants failed to identify a single factual or legal issue that would necessitate the reversal of the District Court or the bankruptcy court's opinions. Before addressing the specific issues, though, I think it's important to take a step back. Have you seen that the proper elements for an unjust enrichment claim is not a legal issue? Your Honor, the proper elements of the unjust enrichment issue is a legal issue. However, and I wanted to address your question, so thank you for bringing it up. The court's consideration of this wrongfulness element was done at the end of its unjust enrichment analysis. So as the District Court described, the bankruptcy court conducted the normal analysis under the five factors identified by the North Dakota Supreme Court, and then looked at the end at this potential sixth element. And the court stated, even if the court was going to ignore all the rationale in the paragraphs above, the paragraphs above were talking about the five elements, which it is not, the law of unjust enrichment in North Dakota requires one additional requirement, and then looked at the wrongful conduct. Now, arguably, North Dakota law is unclear on this issue, as the District Court noted, because some of the North Dakota Supreme Court decisions have looked at this wrongfulness element, whereas others have expressly said, no, the wrongfulness element is not required. However, it's not dispositive here, because the bankruptcy court conducted an extensive analysis of the five factors and found that PWE and Mr. Carlson could not satisfy those factors. And the real key point in that analysis is a right to the funds. So under North Dakota law, essentially what's required for unjust enrichment is that a party must retain a benefit at the direct expense of the complainant. At trial and here on appeal, PWE and Mr. Carlson cannot prove that RSI's retention of the return taxes comes at their direct expense, because they are unable to show that they have any right to those funds. PWE and Mr. Carlson's argument, essentially, is that they are the taxpayer, and Carlson argues that if he had not made the wagers, there would have been no money taken out as the takeout. And I want to take a quick point just to explain what the takeout is and how it is established. So the takeout, when a player makes a bet through RSI on a specific race, RSI would then transfer that bet to the racetrack where the race is being conducted. The jurisdiction of that racetrack establishes a certain percentage that is withheld from each bet. And then that percentage that's withheld is called the takeout. Pursuant to a contract between RSI and the racetrack, the takeout was retained by RSI, and a track fee was paid to the racetrack. That takeout was then used to pay the expenses of RSI, including, at the time, the taxes that everybody believed were owed. It's really important to note, though, that the players were not penalized for the takeout. So if a player made a bet and won, the player received the full value of his or her bet plus any winnings. So, for example, if I were to make a $10 bet in a jurisdiction that had a 15% takeout rate, so $1.50 of my bet would be the takeout, and I had a winning bet, I would receive my full $10 bet plus my winnings. There would be no deduction of $1.50 from my bet. I received what I bet. And then, obviously, if I had a losing bet, I received nothing. This entire analysis that the Bankruptcy Court conducted, based on factual findings, is similar to the analysis conducted by the Tax Court in the Lacani decision. That decision is the only other court case that any of the parties were able to find that dealt with the specific issue of whose expenses, who owns the takeout, and who is responsible for paying the expenses out of that takeout. The Lacani Court determined that the racetrack owned the takeout and was responsible for paying the taxes. Under the contract between RSI and the racetrack, RSI, as the service provider, essentially stepped into the shoes of the racetrack, and similarly was the owner of the takeout and was responsible for paying the expenses. What's key is that just as the Lacani Court determined that the player in that case was not responsible for paying expenses, the Bankruptcy Court made the same determination. And because RSI was the one that was responsible for paying the taxes and paying the expenses and owned the takeout, Mr. Carlson and PWE had no right to the return taxes. Counsel, I think you're making some very good points, but does it change the fact that PWE was paying more than necessary to cover the taxes on its wagers? Your Honor, I especially disagree with the way that you stated that because PWE wasn't paying more of its way. The takeout was owned by RSI. Then RSI entered into an oral agreement with PWE and with Mr. Carlson to provide them a rebate. So RSI was voluntarily agreeing to give up a portion of the takeout as a rebate to players in order to incentivize them to come back and continue to bet through RSI. Under that arrangement, PWE actually received $30 million more than what they would have received on their winning bets through the rebate. So it was a mechanism to incentivize players to continue to bet with the service provider, and that's what occurred. And so PWE and Mr. Carlson were never paying the taxes. Simply put, the takeout that was being withheld from their bets, RSI was using it to pay its taxes and then had a separate agreement with Mr. Carlson and with PWE that provided for the rebate to be paid. Now, touching briefly, because I see I have only a few more minutes left, on the oral contract issue. Your Honors, under North Dakota law, an oral contract is interpreted the same way as a written contract is interpreted, except that extrinsic evidence is used to establish the terms of the contract. The trial court is responsible for determining what those terms are. The record is clear here that the bankruptcy court considered the extrinsic evidence and determined that in both PWE and Mr. Carlson's oral contracts, there was no contractual term that required RSI to pay retroactive taxes, so taxes that were returned, to either of the appellants. The bankruptcy court made that determination based on testimony from the two parties that made the oral contract, both contracts. The bankruptcy court made that determination based on testimony from Mr. Wagner and testimony from Ms. Bala for PWE's contract, and made that determination based on testimony from Mr. Carlson and Ms. Bala, considering Mr. Carlson's contract. The bankruptcy court did consider the income records that Ms. Anderson referenced and determined that the income records supported both parties' interpretation of oral contract, but essentially did not show that a retroactive return of tax money would need to be paid to PWE. The district court reviewed that determination and found that it was an appropriate inference from the exhibits. An inference is subject to the clearly erroneous standard here on review, and PWE and Mr. Carlson have not demonstrated that there is sufficient reason under the clearly erroneous standard for that inference to be improper. Counsel, before you use up all your time, in that same vein, would you be a little more precise in responding to the historical records that she contends supported PWE's version of what the contract was? As I understand, she said if you go back and look historically, it matches up with the interpretation or the meaning of the oral contract that the appellants would attach to it. Your Honor, as the parties argued at trial, the income records support both of the interpretations of the contract. So PWE was saying that essentially you look at that bottom line, that they got everything after taxes were paid, and essentially argued that if no taxes were paid, all the money needs to flow to them. Ms. Balla's explanation was that a variable rebate model was set up in order to protect both RSI and PWE, and that the income sheets, each sheet, really reflected that model. So expenses were built in, there was a 1% fee built in for RSI, and that resulted in essentially a 9.5% that was held by RSI to cover its expenses and make sure that it wasn't paying PWE such a high rebate that would essentially force RSI to go into the black. Importantly though, what the judge found is that while those income records supported both interpretations, it did not demonstrate what would happen if taxes were returned. And so because of that, and because of that factual finding, the income records do not require reversal of the decision. Your Honor, I need to turn my time over to Mr. Kaler, unless you have any other further questions for me. Mr. Kaler? Thank you, Your Honor. This is Kip Kaler. May it please the Court. I am the bankruptcy trustee, and I'm also authorized to act as the attorney for the bankruptcy estate. I've taken a rather limited role in this case in order just to protect the bankruptcy process. And if you noticed my brief, I limited it to, I'm not arguing the substantive law as to whether Carlson or PWE are entitled to a claim, but I am arguing that procedurally, they cannot have claims that do not exist under state law. The bankruptcy court is not a place where it just does equity. That is a long-gone concept that doesn't apply. The Supreme Court, the U.S. Supreme Court, has said the validity of a claim is generally a function of underlying substantive law, and that's been my position throughout. To the extent Carlson or PWE can prove that they have a contract claim, they can prove it. Now, I may have handled it differently than Susan Bala when she objected to the claims. I may have resolved these somehow. She's chosen not to, and she's certainly entitled to that, and she's had a trial before the court, and the court's decided that there is no contract covering the specific issue of this money to be refunded to the bankruptcy estate. So the question becomes, does PWE or Carlson have a contract claim? Alternatively, they make the argument of unjust enrichment, and again, that's a state law claim recognized in North Dakota. The reason I got involved a little more was Carlson was making a lot of equity arguments. Each of the headings of his arguments starts out with equity and the argument of restitution and how this ought to be handled. That is not recognized in North Dakota. To the extent he can categorize his claim, or PWE for that matter, under the unjust enrichment claim, the court needs to consider that and decide whether or not that's an appropriate claim on which to grant relief. Do you have any view about the consideration of wrongdoing? That's not an issue in North Dakota. In fact, I just tried successfully a claim for unjust enrichment in North Dakota State Court. It's on appeal to the North Dakota Supreme Court at this time, and it is not an element necessary for unjust enrichment. It boils down to, is there an absent of justification for the enrichment or the impoverishment? That's the fourth element of unjust enrichment. That is really a question of law. The bankruptcy court or the trial court is tasked with the job of tell us what the facts are. Who said this? Who did what? What are the facts? From that, the court reaches a conclusion of law as to whether unjust enrichment is appropriate in this circumstance. That's where it becomes a question of law to this court, is based on the bankruptcy court, the trial court's findings of fact, should the court have granted unjust enrichment. It's a legal conclusion based upon underlying fact finding. My principle point, however, is the bankruptcy court is not a court of equity to the extent unjust enrichment can be proven. That's a claim recognized under state law and can be allowed similarly a contract claim. That's my primary focus. Unless you have some other question, that's what I wanted to emphasize on behalf of the bankruptcy estate. Thank you, Mr. Kalin. All right. Ms. Anderson? Yes, thank you, Your Honor. The primary thing I want to focus on is a statement that Mr. Consilla made three separate times in his argument. RSI is the owner of the takeout,  funds. This is the statutory argument that we address at length, Your Honor. Part of the problem with the court's ruling on unjust enrichment is not just that they considered this element of wrongdoing that the court should not have considered, but also that the court found that, quote, the circumstances here show that RSI had a more equitable claim to the money. RSI was entitled under the law to its takeout. The problem with that claim is that under North Dakota law, RSI is not in fact entitled under the law to its takeout. That's where we cite the North Dakota Century Code, section 53-06.2-11, where in subparagraph five, the court says if you deduct money under the takeout and you don't use it for takeout, it needs to go to charitable purposes. Now, opposing counsel has said, okay, but that doesn't mean that it needs to go to PWD. Well, the reason it needs to go to PWD is by contract. But the problem with the court's ruling is that the court found that RSI, the reason there was no unjust enrichment was that RSI was legally entitled to this money, that it belonged to RSI, that it's RSI's compensation. And if you start from that premise, you're never going to find unjust enrichment. And that entire premise is wrong. And when we talk about who the expenses were, the direct expense of the taxes, the direct expense of PWD and Carlson, because that's how they get deducted. They have their handle. The money for expenses gets deducted. The portion that's left for the deduction, that goes into the wagering pool. That's the betting pool. So we're playing with now the money that got deducted. And both parties had a contract where after the expenses get taken out, the money that gets deducted comes back to them as rebate. And I appreciate that, you know, PWE made the money that it was supposed to make on its wagers. But the point is the parties had this other contract. And under the contract, PWE got the rebate of what was left of that takeout. And that's the real problem with the court's ruling there. And in terms of the documentary evidence, just to hit on that briefly, counsel again mentioned the income statements and how they sort of go both ways. But what counsel didn't mention is that there are a number of contemporaneous emails, all of which refer to the 1% fee, all of which were exchanged between the parties, and all of which say that that's the deal. And the court does not discuss any of them, nor does this court discuss the testimony of Bill Woss. And that's all I have, Your Honor, unless there are questions. Thank you, Ms. Anderson. Mr. Frenstad? Thank you, Your Honor. At its heart, this is a case where a pile of money has been refunded pursuant to a ruling from this court that neither party expected to have. What we know is that RSI got all of its fees that it ever expected to get. But RSI made a mistake of law. It admits it illegally collected taxes. It admits that it paid them to the state. RSI isn't the one who fought this fight. It was PWE on behalf of other wagers like Mr. Carlson. And it defies logic to then say that RSI should get to keep this unexpected money. And I would refer the court again. One of the problems I have is neither the bankruptcy court nor the district court spent any time looking at the restatement. Look at Restatement 3rd, Section 64.3. If a claimant obtains restitution from recipients of payments to which third persons have a better legal or equitable right, such persons are entitled. Here, the money's come back from the state, and now it should come back to PWE and Mr. Carlson. We ask that the decision of the bankruptcy court be made. Thank you. Thank you, counsel. Court appreciates all of your participation in the argument this morning. And we will take the case under advisement. All right. Counsel may be excused.